**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                  :
ROGER MOORE,                      :
                                  : Civil Action No. 09-6065 (NLH)
            Petitioner,           :
                                  :          **O P I N I O N**
       v.                         :
                                  :
WARDEN DONNA ZICKEFOOSE,           :
                                  :
                                  :
            Respondent.           :
_____:


**APPEARANCES:**

Roger Moore, Pro Se
55386-060
Federal Correctional Institution
P.O. Box 2000
Fort Dix, NJ 08640

Mark Christopher Orlowski, Esq.
Assistant U.S. Attorney
Office of the U.S. Attorney
402 East State Street
Trenton, NJ 08608
Attorney for Respondent


**HILLMAN, District Judge**

    Petitioner Roger Moore, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus, pursuant to 28

U.S.C. § 2241.[1]  The respondent is the warden Donna Zickefoose. Respondent filed a Response to the petition and the administrative record of the case (docket entry 8).  Petitioner responded to Respondent's filing with a brief (docket entry 16). Petitioner also filed three motions, which remain pending (docket entries 11, 15, and 17).

Because it appears from a review of the submissions and record that Petitioner is not entitled to relief, the petition will be denied.

## BACKGROUND

**A.    The Second Chance Act**

Residential Re-Entry Center ("RRC") assignments are governed by 18 U.S.C. § 3624(c)(1), which was amended in 2007 by the Second Chance Act, Pub. L. No. 110-199, effective April 9, 2008. In essence, the Act extended the maximum amount of time that the BOP may place an inmate in an RRC from 180 days to twelve months.

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
            * * *
(c) The writ of habeas corpus shall not extend to a prisoner unless-... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ....

Regularly referred to as the "Second Chance Act," the amended statute provides, in pertinent part:

> (1) In General.-The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.-The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.
> ...
> (4) No limitations.-Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
> ...
> (6) Issuance of regulations.  The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is-
>
>> (A) conducted in a manner consistent with section 3621(b) of this title;
>>
>> (B) determined on an individual basis; and
>>
>> (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c).  As noted in the statute, the BOP was ordered to issue regulations not later than 90 days after the date of the enactment of the Second Chance Act, to ensure that placement was conducted consistently with § 3621(b) of the

3

statute, that the determination was individualized, and that the duration of placement was sufficient.  Section 3621(b) states:

> (b) Place of imprisonment.  The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence- (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to Section 994(a)(2) title 28 . . .
>
> . . . Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment.

On April 14, 2008, the BOP issued a "Memorandum for Chief Executive Officers", providing staff guidance for implementing the Second Chance Act.  The memorandum indicated that the BOP's then-existing time frame on pre-release community confinement placement was no longer applicable and should not be followed, that certain adjustments were necessary to the Program Statement

7310.04, concerning review of inmates for pre-release RRC placement, and that each inmate's pre-release RRC decision must be analyzed and supported under the § 3621(b) factors, cited above. Among other guidelines, the memorandum provided:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

BOP Memo, April 14, 2008, as cited in Strong v. Schultz, 559 F. Supp.2d 556, 562 (D.N.J. 2009).

Subsequently, the BOP issued the required regulations, effective October 21, 2008, setting forth procedures for evaluating inmates' placement decisions to RRCs or home detention.  See 28 C.F.R. §§ 570.20-570.22.  The regulations do not include the requirement in the April 14, 2008 memo for approval from the Regional Director for pre-release RRC placement beyond six-months.[2]

---

[2] Title 28 of the Code of Federal Register, section 570.22 states: "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."

The time frames noted are set forth in section 570.21, which states:

5

B.     **Petitioner's Claims and Application of the Act.**

    1.     Background of Petitioner's Case

Petitioner was convicted in the United States District Court for the Northern District of Ohio for traveling to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(B).  On January 25, 2008, he was sentenced to a 55-month term of imprisonment, with eight years supervised release.  Assuming Petitioner receives all good conduct time available, his release date is April 3, 2011.

On September 25, 2009, nineteen months from his projected release date, he was reviewed for placement in a Residential Re-entry Center ("RRC").  On that date, Respondent recommended a placement of 60-90 days RRC placement.  Exhibit 1 attached to

---

    (a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.

    (b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.

    (c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.

    28 C.F.R. § 570.21

Declaration of Bobbi Brown ("Brown Declaration"), submitted by Respondent, includes the Program Review Report, signed September 25, 2009.  The Report noted that Petitioner had a Bachelor's Degree in Chemistry and work experience as a chemist, campus chairperson, company CEO and in sales.  Petitioner had plans to work as a wedding photographer.  Given the severity of his offense and risk to the community, in addition to his needs, 60-90 day RRC placement was recommended.  The report notes that Petitioner was considered for up to 12 months RRC placement, but that after considering Petitioner's history, needs, and public safety issues, it was decided that the 60-90 day placement would provide the greatest likelihood of successful reintegration.

Then, Petitioner's Unit Team completed a Residential Re-Entry Center Consideration/Re-Consideration form, attached as Exhibit 2 to the Brown Declaration submitted by Respondent.  The Unit Team considered the following factors in formulating an RRC start date for Petitioner: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence- (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission.  According

to the form, the Unit Team also considered Petitioner's need for services, public safety and the necessity of the BOP to manage its inmate population.  After consideration, the Unit Team recommended the same placement of 60-90 days, and stated:

> Inmate Moore is serving a 55 month sentence for Travel o Engage in Illicit Sexual Conduct.  He wishes to relocate to Massachusetts.  Inmate Moore has a Bachelor's Degree in Chemistry and has work experience as a chemist, campus chairperson, company CEO, and in sales.  Upon his release he wishes to work as a wedding photographer.  Given the severity of the instant offense and risk to the community, in addition to the inmate's needs, a 60 to 90 day RRC placement recommendation is determined to be sufficient.

Prior to his receiving his RRC placement, Petitioner began the Administrative Remedy Process,[3] requesting RRC placement. See Declaration of Tara Moran ("Moran Declaration") ¶ 4; Exhibit

---

[3] The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff. See 28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. See 28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. See 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. See id.  Appeal to the General Counsel is the final administrative appeal. See id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

8

2). Petitioner exhausted the appeal and was denied relief, being advised that he would be considered for RRC placement when he was 17-19 months from his projected release date.  Then, 20 days after filing the instant petition, Petitioner filed a second administrative remedy requesting an 8-month RRC placement. (Moran Decl., ¶ 5; Exhibits 3, 4).  His request was denied, and Petitioner appealed to the Northeast Regional Office.  At the time the record of this case was received by Respondent, Petitioner's administrative appeal was pending.

   2.   Petitioner's Claims in this Petition

   Petitioner relies on Strong v. Schultz, 599 F. Supp. 556 (D.N.J. 2009) for the contention that he is eligible for a maximum twelve month pre-release RRC placement (Petition, ¶ 10). He argues that with the unemployment rate and economy, a 60-90 day RRC placement is insufficient to secure employment and successfully re-enter the community (Petition, ¶¶ 32, 33).

   Petitioner argues that the BOP is failing to correctly implement the Second Chance Act resulting in a violation of his constitutional rights.  He states that the BOP is failing to consider inmate placement for the maximum allowable time, and that "the arbitrary and capricious abuse of discretion, resulting in willful, egregious and unlawful actions of the staff at FCI-Ft. Dix, a facility of the BOP, have resulted in unlawful actions

9

of a federal agency, where such actions are contrary to the intent of Congress and without observance of procedure required by law . . . ." (Petition, p. 4).

Petitioner further argues that Respondent is not following the Strong decision, is not making an individualized determination of his circumstances, and has violated equal protection by treating inmates differently.

## DISCUSSION

**A.    Exhaustion**

Petitioner argues that his administrative remedies have been fulfilled, but that Respondent is "scheming to delay and obstruct the legitimate efforts . . . to seek administrative redress and exhaust administrative remedies." (Petition, ¶ 74, et seq.). As noted above, Respondent concedes that Petitioner exhausted his remedies with regard to his first administrative grievance concerning his RRC consideration, but that he has not exhausted his remedies with respect to his second grievance challenging the actual time period determined for RRC placement. In fact, Respondent notes that the challenge to the actual RRC placement time was not grieved until after this petition was filed.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a

10

petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000); see also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Petitioner has not alleged any facts that would permit this Court to find that exhaustion of his administrative remedies would be futile or that requiring exhaustion would subject Petitioner to "irreparable injury." By characterizing the process as futile, Petitioner presupposes that his grievance will be denied. Without a full administrative record regarding the claim asserted here, this Court cannot determine whether the decision was made in accordance with law. See, e.g., Gamble v. Schultz, No. 09-3949, 2009 WL 2634874 (D.N.J. Aug. 24, 2009); Harrell v. Schultz, No. 09-2532, 2009 WL 1586934 (D.N.J. June 2, 2009).

Finally, contrary to Petitioner's argument, nothing in the Second Chance Act entitles Petitioner to a halfway house placement longer than the 60-90 days already approved. Those pre-release placement decisions are committed, by statute, to the discretion of the Director of the Bureau of Prisons, whose exercise of discretion is to be guided by the enumerated considerations.

**B.   Merits of the Petition**

Alternatively, Petitioner's claims will be denied on their merits. In Strong v. Schultz, 599 F. Supp.2d 556 (D.N.J. 2009), the petitioner, Douglas Strong's RRC placement decision was made on October 2, 2008. Thus, the decision was made subsequent to

the April 14, 2008 memo, but prior to the October 21, 2008 enactment of the regulations by the BOP.  In Strong, the court held that the April 14, 2008 Memorandum issued by the BOP was inconsistent with the Second Chance Act's amendments to 3624(c), because it "impermissibly constrains staff's discretion to designate inmates to a CCC for a duration that will provide the greatest likelihood of successful reintegration into the community, contrary to § 3624(c)(6)(C)."[4]  Strong, 599 F. Supp.2d at 563.  Thus, as to Mr. Strong, the court held:

> Accordingly, because the duration of Strong's [RRC] placement was determined pursuant to these impermissible limitations, the BOP abused its discretion in determining that Strong's placement would be for six months.  This Court will therefore grant the writ to Strong, and remand the matter to the BOP with instructions to consider Strong for a longer placement in a [RRC], in accordance with the Second Chance Act, and without regard to the April 14, 2008, Memorandum.

Id. at 563.

In this case, however, Petitioner's placement decision was made after the effective date of the interim rule.  Nevertheless, Petitioner alleges that his placement decision was impermissibly constrained by the six-month presumption contained in the April 14, 2008, memorandum.  The only factual allegation made in support of this contention is that BOP staff at FCI Fort Dix have

---

[4] Prior to 2006, the BOP referred to halfway houses as "Community Corrections Centers," or "CCCs."  Today, halfway houses are more commonly knows as RRCs.

not awarded more than 180 days RRC placement to any prisoner since the effective date of the Second Chance Act.

Courts since Strong have recognized the limited holding of Strong. In cases, such as here, where Petitioner's RRC placement decision was made after the BOP issued the appropriate regulations and abandoned the directive in the Memorandum concerning the six-month presumptive placement, courts have consistently held that the Second Chance Act does not guarantee a one-year RRC placement, but "only directs the Bureau of Prisons to consider placing an inmate in a RRC for *up to* the final twelve months of his or her sentence." Lovett v. Hogsten, 2009 WL 5851205 (6th Cir. Dec. 29, 2009)(unpubl.); see also Travers v. Federal Bureau of Prisons, 2009 WL 4508585 (D.N.J. Nov. 30, 2009)(Hillman, J.)(finding that ". . . nothing in the Second Chance Act entitles Petitioner to a halfway house placement longer than the 120-150 days already approved. These pre-release placement decisions are committed, by statute, to the discretion of the Director of the Bureau of Prisons, whose exercise of discretion is to be guided by the enumerated considerations."); Creager v. Chapman, 2010 WL 1062610 (N.D. Tex. Mar. 22, 2010)(holding that although Petitioner disagrees with her RRC placement date after consideration of the § 3621(b) factors, this "does not establish a constitutional violation, as nothing in the Second Chance Act or § 3621(b) entitles [Petitioner] or any other

14

prisoner to any guaranteed placement in a residential reentry center[]" and "'the duration of [RRC] placement is a matter to which the [BOP] retains discretionary authority.'" (citations and quotation omitted)); Chaides v. Rios, 2010 WL 935610 (E.D. Cal. Mar. 15, 2010)("In sum, the BOP has discretionary authority to transfer an inmate to an RRC at any time, after considering the factors set forth in 18 U.S.C. § 3621(b), and has a separate and distinct obligation to consider an inmate for transfer to an RRC for up to twelve months prior to the inmate's release date, after considering the factors set forth in section 3621(b)." (citation omitted)).

In distinguishing Strong, the Middle District of Pennsylvania examined a claim by a petitioner who received a 60-day RRC placement recommendation. See Wires v. Bledsoe, 2010 WL 427769 (M.D. Pa. Feb. 3, 2010). In the Wires case, the court found that:

> . . . since the petitioner's unit team recommended significantly less than six months (only 60 days) in a RRC, there is no basis to infer that their discretion was in any way constrained or chilled by the requirement stated in the memoranda that RRC placement beyond six months must be based on unusual or extraordinary circumstances and must be approved by the Regional Director.
>
> The petitioner was considered for placement in a RRC. Thus, he was not denied due process. Further, there is no basis to infer in the instant case that the petitioner did not receive the individualized consideration for RRC placement required by the Second Chance Act. That petitioner disagrees with the

> recommendation for a 60-day placement is not a basis to issue a writ of habeas corpus.

Id. at *12.  The Wires court cited Torres v. Martinez, a case also in the Middle District of Pennsylvania, which was dismissed for failure to exhaust administrative remedies.  However, the Torres court also examined the merits of the case, finding:

> Torres asserts that the April 14, 2008 Bureau of Prison Memorandum imposes a policy of categoric pre-release placement for a time of six months or less because placement for a period greater than six months requires approval by a Bureau of Prisons Regional Director.  The petitioner states that denying prison staff the discretion to recommend a placement longer than six months without advance written approval by a Regional Director is inconsistent with 18 U.S.C. 3624(c), as interpreted in Strong, 599 F. Supp.2d at 561-62.
>
> In Strong, the court found that the policies elaborated in the April 14, 2008 Memorandum were in violation of regulatory guideposts included in the Second Chance Act's amendments to 18 U.S.C § 3624(c).  It held that the "[m]emorandum impermissibly constrains staff's discretion to designate inmates to a CCC for a duration that will provide the greatest likelihood of successful reintegration into the community, contrary to § 3624(c)(6)(C)."
>
> There is evidence that the April 14, 2008 Memorandum has been replaced with formal federal regulations applicable to the petitioner. Interim regulations passed on October 21, 2008 state that "[i]nmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months." 28 C.F.R. § 570.21(a).  Moreover "[i]nmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part." 28 C.F.R. § 570.22 (Oct. 22, 2008).

16

> The court finds that the Bureau of Prisons did not violate the Second Chance Act when it determined that Petitioner Torres would be placed in pre-release custody for six months, regardless of whether it followed the April 18, 2008 Memorandum or the October 2008 Regulations when it reviewed the petitioner's case. In doing so, the court declines to extend the reasoning of Strong to the petition before us. Unlike Strong, the petitioner has provided no reason why he requires more than six months of pre-release placement, other than that it would give him the greatest likelihood of successful reintegration.

Torres v. Martinez, 2009 WL 2487093, at *4-5 (M.D. Pa. Aug. 12, 2009)(internal citations omitted).

Likewise, the Eastern District of Kentucky has distinguished Strong in Ramirez v. Hickey, 2010 WL 567997 (E.D. Ky. Feb. 12, 2010), finding that the petitioner's reliance on Strong was misplaced, because Mr. Strong's RRC placement was determined in accordance with the memorandum. In petitioner Ramirez's case, there was nothing presented to indicate that the RRC placement decision was "based upon arguably discretion-limiting criteria contained in the now defunct April 14, 2008, Memorandum. Consequently, the reasoning of Strong is inapplicable here ...." Ramirez, at *4.

In fact, cases brought before various district courts around the country have resulted in the courts examining whether the § 3621(b) factors were considered by the BOP in making the RRC placement decision, after an individualized assessment. When the 3621(b) factors are considered, the courts are satisfied that the law was correctly applied and followed.

17

In the Eastern District of Arkansas, the District Court examined BOP Program Statement 7310.04.  See Lewis v. Outlaw, 2010 WL 1198179 (E.D. Ark. Mar. 23, 2010).  That Program Statement states that RRC needs can usually be met by placement of six months or less, stating:

> (1) An inmate may be referred up to 180 days, with placement beyond 180 days highly unusual, and only possible with extraordinary justification. In such circumstances, the Warden shall contact the Regional Director for approval and the Chief USPO in the inmate's sentencing district to determine whether the sentencing judge objects to such placement.

Program Statement 7310.04, P. 8.  The Eastern District of Arkansas, citing the Court of Appeals for the Eighth Circuit, noted that the "extraordinary justification" requirement was "a legitimate standard, consistent with 18 U.S.C. § 3621(b), that the BOP may use when considering a request for extended RRC placement."  Lewis, at *3 (citing Miller v. Whitehead, 527 F.3d 752 at 758-59 (8th Cir. 2008)).  The Eastern District of Arkansas found that the BOP policy "is a valid exercise of the BOP's broad discretion under 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c)." Lewis, at *3.

In the case before this Court, it is clear that Petitioner was considered for RRC placement in accordance with the factors enumerated in § 3621(b), and on an individualized basis.  This is evidenced by Exhibits to the Brown Declaration, namely, the

Program Review Report (exhibit 1), and the residential re-entry consideration form (exhibit 2).  Brown, the Case Manager and a member of the Unit Team for Petitioner declares that she reviewed Petitioner's Central file, met with Petitioner for the Program Review, and assessed Petitioner's file in order to make the RRC pre-release placement recommendation.  (<u>See</u> Brown Declaration).  The Re-Entry Consideration Form, Exhibit 2 to the Brown Declaration, specifically lays out the § 3621(b) factors to be considered.  The conclusion on the form is that the 60-90 day recommendation for RRC placement was based on Petitioner's background experience and severity of the offense.

Furthermore, the <u>Strong</u> decision does not apply to Petitioner's case, as his RRC placement decision was (1) decided after the BOP imposed appropriate regulations; and (2) was decided in accordance with the factors set forth in § 3621(b).

Thus, based on the foregoing, this Court finds that the BOP complied with the Second Chance Act and Petitioner has not demonstrated that he "is in custody in violation of the Constitution or laws or treaties of the United States ..." as require for relief under 28 U.S.C. § 2241.

**CONCLUSION**

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, is hereby denied.[5]

An appropriate Order accompanies this Opinion.

      /s/ NOEL L. HILLMAN
NOEL L. HILLMAN
United States District Judge

Dated: JUNE 29, 2010

At Camden, New Jersey

---

[5] Petitioner's pending motions will be dismissed as moot. The Motion for Unpublished Decisions (docket entry 11) was opposed, with Respondent noting that they had sent Petitioner the copies he requested. As to the Motion for an Extension of Time to File a Reply (docket entry 15), this Court notes that Petitioner did file his reply on March 11, 2010 (docket entry 16). Finally, Petitioner's Motion for Pro Bono Counsel (docket entry 17) is now moot, considering this Court's disposition of this case.